UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHRIS SALMONSON,

    Plaintiff,

v.                                            Case No: 2:14-cv-20-FtM-29MRM

INTERNAL REVENUE SERVICE
DEPARTMENT OF TREASURY,

    Defendant.
_____

**OPINION AND ORDER**

    This matter comes before the Court on the defendant's Motion to Dismiss, and in the Alternative, Motion for Summary Judgment (Doc. #44) filed on May 29, 2015.  Plaintiff filed a Conditional Acceptance of Defendants Motion to Dismiss and in the Alternative Motion for Summary Judgment (Doc. #54) on August 13, 2015, and defendant subsequently moved to strike the document.  On February 18, 2016, the Court granted the motion to strike and provided plaintiff <u>one</u> opportunity to file a response.  That deadline expired and plaintiff failed to respond to the Motion to Dismiss, and in the Alternative, Motion for Summary Judgment (Doc. #44), which is now ripe for review.

    The motion to dismiss is based on a failure to exhaust administrative remedies, and based on facts outside the four corners of the Complaint (Doc. #1) and incorporated Supplemental

Complaint (Doc. #39).  Assuming a motion to dismiss is appropriately considered[1], plaintiff asserts that he exhausted his administrative remedies in full.  Taking all the allegations in the Complaint (Doc. #1) and Supplemental Complaint (Doc. #39) as true for purposes of the motion to dismiss, the motion to dismiss will be denied.

**I.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party."  Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010).  A fact is "material" if it may affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party.  Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010).

---

[1] A motion to dismiss is improper once a responsive pleading has been filed.  Skrtich v. Thornton, 280 F.3d 1295, 1306 (11th Cir. 2002).  Defendant filed an Answer (Doc. #18) to the Complaint and an Amended Answer (Doc. #41) to the Supplemental Complaint.

2

"In a FOIA case, a court may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations when the affidavits or declarations describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Cunningham v. U.S. Dep't of Justice, 40 F. Supp. 3d 71, 82 (D.D.C. 2014) (citations omitted), aff'd, No. 14-5112, 2014 WL 5838164 (D.C. Cir. Oct. 21, 2014), cert. denied, 135 S. Ct. 2059 (2015), reh'g denied, 135 S. Ct. 2882 (2015). "An agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt" from FOIA's requirements." Id. (citation omitted).

## II.

On January 15, 2014, plaintiff Chris Salmonson (Salmonson) initiated his Complaint under the Freedom of Information Act (FOIA) and the Privacy Act against the Internal Revenue Service (IRS), Department of Treasury, to require or compel disclosure of agency records responsive to his FOIA and Privacy Act requests. (Doc. #1.)

**February 8, 2012 Request**

By letter dated February 8, 2012, Salmonson initiated a Supplemental Request under FOIA and the Privacy Act.[2] (Doc. #44-3, Exh. 1.) On February 14, 2012, Disclosure Specialist Charlotte Balettie (Balettie), of the Disclosure Office of the IRS, was assigned to process Salmonson's FOIA request dated February 8, 2012, for the administrative file, collection file, litigation file, and other forms and transcripts for tax years 1997 through 2011. (Doc. #1, ¶ 1; Doc. #44-2, ¶¶ 1, 3, 5; Doc. #44-3, Exh. 1.)

By letter dated February 27, 2012, Balettie notified plaintiff that the estimated cost to process the request of almost 15,000 pages would be $2,980.00, based on a charge of .20 cents per page for copies. (Doc. #1, ¶ 2; Doc. #44-2, ¶ 8, 9; Doc. #44-5, Exh. 3.) In light of the considerable cost, the request was deferred pending payment within 35 days. (Doc. #44-2, ¶ 9.)

Over a year later, by letter dated April 25, 2013, Salmonson enclosed "under necessity, tender of payment in the form of a Promissory Note with Verified Notice of Tender of Payment." (Doc. #1, ¶ 3; Doc. #44-2, ¶ 10; Doc. #44-6, Exh. 4.) Attached to the letter is an International Promissory Note signed by Salmonson and two witnesses and a "Verified Notice of Tender of Payment." (Id.)

---

[2] The first FOIA request dated January 12, 2012, was not processed as it failed to authenticate the requestor's identity. (Doc. #44-2, ¶ 4; Doc. #44-4, Exh. 2.)

4

In a letter dated May 7, 2013, Balettie acknowledged receipt, and notified Salmonson that the IRS does not accept such methods of payment and that payment must be by check or money order. Balettie again notified Salmonson that payment must be made within 35 days from the February 27, 2012 letter or the request would have to be resubmitted.  (Doc. #1, ¶ 4; Doc. #44-2, ¶ 11; Doc. #44-7, Exh. 5.)  Payment by check or money order was not made.

**May 29, 2013 Request**

By request dated May 29, 2013[3], Salmonson made a "Supplemental Request", acknowledging the May 7, 2013, letter, promising to pay fees and costs, and stating that "[i]f costs are expected to exceed the payment sent to you on April 23, 2013 by registered mail [ ], please send an estimate of the cost."  No check or money order was included.  (Doc. #1, ¶ 5; Doc. #44-2, ¶ 12; Doc. #44-8, Exh. 6.)

By letter dated June 12, 2013, Balettie notified plaintiff that the estimated cost was $25.00 under a new procedure for responding to a FOIA request in electronic format (CD), and that payment in the form of a check or money order payable to the Treasury of the United States must be received in advance of processing a FOIA request.  (Doc. #1, ¶ 6; Doc. #44-2, ¶ 13; Doc. #44-9, Exh. 7.)

---

[3] The letter is dated 2012, but this appears to be a typographical error recognized by both parties.

5

Salmonson granted a Power of Attorney to Robert Kelly to receive the responsive documents, as he is currently incarcerated at the DeSoto Correctional Institution and is unable to take custody of a CD, and made another or new FOIA request dated June 27, 2013.  (Doc. #1, ¶ 7.)

**June 27, 2013 Request**

By letter dated July 8, 2013, Balettie responded to Salmonson that he must have Mr. Robert Kelly submit an executed Tax Information Authorization Form 8821 for disclosure because tax records are confidential and may not be disclosed unless consent of the requester is provided in a separate written document.  (Doc. #44-10, Exh. 8.)  Mr. Kelly sent the IRS a letter, dated July 1, 2013, requesting the CD and enclosing the $25.00 processing fee in the form of a postal money order.  (Doc. #44-2, ¶ 15; Doc. #44-11, Exh. 9.)  The Tax Information Authorization Form 8821 was not enclosed, and by letter dated July 11, 2013, Balettie responded to Mr. Kelly that consent was required before disclosure could be made of Salmonson's records.  (Doc. #44-2, ¶ 16; Doc. #44-12, Exh. 10.)

**August 7, 2013 Request**

By letter dated August 7, 2013, Mr. Kelly expressed puzzlement, presuming that Balettie was requiring more detail about the FOIA request, and included a Tax Information Authorization Form signed by him personally.  (Doc. #1, ¶ 8; Doc.

6

#44-13, Ex. 11.) Balettie started processing the request, and by letter dated August 28, 2013, Balettie notified Mr. Kelly that Salmonson needed to sign the Tax Information Authorization Form in order to complete the request. (Doc. #1, ¶ 10; Doc. #44-2, ¶¶ 19, 20; Doc. #44-14, Exh. 12.)

By letter dated September 3, 2013, Salmonson inquired as to the estimated delivery time for the CD of his FOIA request. (Doc. #1, ¶ 9; Doc. #44-2, ¶ 22.) By letter dated September 11, 2013, Balettie responded by enclosing a copy of correspondence sent to Mr. Kelly requesting a statutory extension of time, and asking Salmonson to complete the Tax Information Authorization Form. (Doc. #1, ¶ 12; Doc. #44-2, ¶ 22; Doc. #44-16, Exh. 14.) By letter dated September 27 or 29, 2013, Salmonson acknowledged the September 11, 2013, letter with the Tax Information Authorization Form signed and enclosed. (Doc. #1, ¶ 13; Doc. #44-2, ¶ 23; Doc. #44-17, Exh. 15.)

By letter dated September 10, 2013, to Mr. Kelly, Balettie stated that she was unable to respond to the FOIA request dated August 7, 2013, and that the statutory response date was being extended until September 24, 2013, after which Salmonson could file suit. "An Administrative appeal is limited to a denial of records, so it does not apply in this situation." (Doc. #44-15, Exh. 13.) The letter also requested an additional extension of time until October 8, 2013, in an effort to locate and consider

release of certain records in order to provide a final response. Salmonson was not required to respond if he agreed to the extension, but was notified that "if you do not agree to an extension beyond the statutory period. Your suit may be filed in the U.S. District Court. . . ." (Id.) Salmonson was notified of the right to file suit or after September 24, 2013. (Doc. #1, ¶ 11; Doc. #44-2, ¶ 21; Doc. #44-15, Exh. 13.)

By letter dated September 30, 2013 to Mr. Kelly, in response to the August 7, 2013 FOIA request, Balettie asked for additional time through November 8, 2013, to complete the FOIA request. (Doc. #1, ¶ 14; Doc. #1-13, Exh. M.)

By letter dated November 25, 2013 to Mr. Kelly, Balettie responded that the August 7, 2013 FOI request asks for the extraction of "the RACS Report – 006", so the entire response was now in review status and Balettie no longer had the case records. (Doc. #1, ¶ 15; Doc. #1-14, Exh. N.)

By letter dated December 9, 2013, to Mr. Kelly, Disclosure Manager Melba A. Tyson stated that she was still working on the August 7, 2013, FOIA request and that she would need additional time to complete the request through January 14, 2014. Ms. Tyson stated that she would contact Mr. Kelly "by January 14, 2014, if [ ] unable to complete [Salmonson's] request." (Doc. #1, ¶ 16; Doc. #1-15, Exh. O; Doc. #44-2, ¶ 24.)

8

By letter dated January 7, 2014 to Mr. Kelly, and signed by Disclosure Manager Melba A. Tyson, a consolidated response to the August 7, 2013 FOIA request and October 18, 2013 Tax Authorization Form was provided. Of the 9369 pages located, 8493 pages were released in full, 114 pages were released in part and withheld in part and 762 pages were withheld in full based on asserted exemptions. Only 9 pages were withheld as outside the scope of the request. (Doc. #39, ¶ 1b; Doc. #44-2, ¶ 25; Doc. #44-18, Exh. 16.) After review by Steven Karon, in the Office of the Associate Chief Counsel of the IRS, an additional 43 pages were released. (Doc. #44-19, ¶ 7.) Plaintiff filed his Complaint Under FOIA (Doc. #1) in federal district court on January 15, 2014. No administrative appeal was filed from the January 7, 2014 disclosure.

### III.

The original Complaint (Doc. #1) is brought pursuant to FOIA and the Privacy Act, but the Complaint only seeks general relief requiring the IRS: (1) to process Salmonson's FOIA request in paper format for the 14,900 pages initially identified; and (2) to process Salmonson's FOIA request in electronic format as well. Salmonson also seeks a declaratory judgment finding that the IRS responses violate FOIA and the new procedure of providing information by electronic format also violates FOIA. The Supplemental Complaint (Doc. #39) asserts two additional grounds.

Supplemental Cause Ground One asserts that the IRS failed to adequately explain why the initial search indicated 14,900 pages but only 9369 pages were eventually identified. Supplemental Cause Ground Two asserts that the IRS failed to credit Salmonson with payment.

**Privacy Act**

As a preliminary matter, the Court finds no separate claims or allegations of a violation under the Privacy Act, which prohibits disclosure of records without a written request or written consent, 5 U.S.C. § 552a(b).  The FOIA response was only provided upon request of Salmonson to respond to Mr. Kelly and with an executed Tax Authorization form.  Therefore, any purported claims under the Privacy Act will be dismissed without prejudice.

**FOIA**

FOIA requires agencies to make information available to the public subject to 9 exemptions that may be asserted.  5 U.S.C. § 552(b).  To prevail in a FOIA case, plaintiff must show that the IRS improperly withheld agency records, and the Court may only order production of "erroneously withheld records."  Cunningham, 40 F. Supp. 3d at 83.  "FOIA clearly requires a party to exhaust all administrative remedies before seeking redress in the federal courts," and exhaustion is a condition precedent to filing suit. Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994) (collecting cases).  "Courts have consistently confirmed that the FOIA requires

exhaustion of this appeal process before an individual may seek relief in the courts." Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 61-62 (D.C. Cir. 1990) (collecting cases).

"Exhaustion of administrative remedies is generally required before filing suit in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision. Id. at 61 (citing McKart v. United States, 395 U.S. 185, 194 (1969)). Under 5 U.S.C. § 552(a)(6)(A)(i), the agency has 20 days, excluding weekends and holidays, after receipt of a request in which to determine whether to comply with the request and to notify the person of that determination, the reasons, and the right to appeal any adverse determination to the head of the agency. In unusual circumstances, this time limit may be extended by written notice setting forth the date on which a determination is expected to be made, but no such notice shall specify a date that would result in an extension of more than 10 working days unless notice is provided allowing the requester to limit the scope of the request. 5 U.S.C. § 552(a)(6)(B)(i), (ii). Under 5 U.S.C. § 552(a)(6)(C)(i), "[a]ny person making a request to any agency for records [ ] of this subsection shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph." "A district court of the United States shall not have jurisdiction to

11

review an agency denial of expedited processing of a request for records after the agency has provided a complete response to the request." 5 U.S.C. § 552(a)(6)(E)(iv).

Two types of exhaustion exist. "Actual exhaustion occurs when the agency denies all or part of a party's document request. Constructive exhaustion occurs when certain statutory requirements are not met by the agency," like applicable time limits. Id. at 1368. With the January 7, 2014, consolidated response to plaintiff's FOIA requests, the IRS enclosed a Notice 393 explaining plaintiff's agency appeal rights, judicial review if the appeal was denied, and the categories of exemptions. (Doc. #39-1, Exh. P.) More specifically, Salmonson was notified that he could appeal with the IRS within 35 days of a denial of access to a record in whole or in part, of an adverse determination, a denial of a request for fee waiver or reduction, or if the response advised that no records exist. Under "Judicial Review", Salmonson was notified that "[i]f we deny your appeal", a complaint may be filed with the District Court.

As discussed in Oglesby and Taylor, once the IRS responded to the pending FOIA requests, even if the response was delayed and after the statutory period, Salmonson was required to first exhaust his administrative remedies with the IRS and have his appeal denied before seeking judicial review. Oglesby, 920 F.2d at 64; Taylor, 30 F.3d at 1369. Summary judgment will be granted in favor of

12

the IRS as to the FOIA requests for failure to exhaust.  As a result, the Court will not address the claimed exemptions.

**Relief Sought**

The Electronic Freedom of Information Act Amendments of 1996 were passed to specifically allow for agency records to be maintained in electronic format, and disclosed electronically, to avoid waste, fraud, and abuse.  Electronic Freedom of Information Act Amendments of 1996, Pub. L. No. 104-231, § 2, 110 Stat 3048 (1996).  Therefore, the Court finds that the IRS was not obligated to provide paper documents after plaintiff acquiesced in writing to receiving the information by CD delivered to Mr. Kelly, and such method of responding is authorized by statute.

The Court finds no authorized form of payment was made by Salmonson other than the $25.00, and advance payment for fees exceeding $250 is authorized by statute, 5 U.S.C. § 552(a)(4)(v).

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion to Dismiss (Doc. #44) is **DENIED**.
2. Defendant's Alternative, Motion for Summary Judgment (Doc. #44) is **GRANTED** and the FOIA claims are **dismissed with prejudice for failure to exhaust administrative remedies**.
3. Any claims under the Privacy Act are dismissed without prejudice.

    4. The Clerk shall enter judgment in favor of defendant accordingly, terminate all pending motions and deadlines as moot, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this __17th__ day of March, 2016.

 

*/s/ John E. Steele*
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Plaintiff
Counsel of record